1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
7                                        AT SEATTLE

8    SMOKEY FERNANDEZ,

9                          Petitioner,           CASE NO. 3:23-cv-05582-JCC-BAT

10          v.                                   **REPORT AND
                                                 RECOMMENDATION**
11   JASON BENNETT,

12                         Respondent.

13

14          Petitioner, Smokey Fernandez, currently confined at Stafford Creek Corrections Center,

15   in Aberdeen Washington, seeks 28 U.S.C. § 2254 relief from a 2020 Clark County Superior

16   Court judgment and sentence.[1] Dkt. 8; Dkt. 31-1 at 2-21 (Ex. 1). Respondent has filed an answer

     to Petitioner's habeas petition and submitted relevant portions of the state court record. Dkts. 30,
17
     31. Petitioner has filed a response to Respondent's answer. Dkt. 32.
18
            The Court having considered the parties' submissions, and the record, recommends the
19
     federal habeas petition (Dkt. 8) be DENIED without an evidentiary hearing and the case be
20

21

22

23   _____
     [1] The Court notes that that the record reflects that on February 23, 2023, the Superior Court entered an
     Order Correcting Judgment and Sentence which corrected only the community custody provision in the
     May 4, 2020, judgment and sentence. Dkt. 8 at 21.

     REPORT AND RECOMMENDATION - 1

DISMISSED with prejudice. The Court also recommends issuance of a certificate of

appealability be DENIED.

## BACKGROUND

### I.    Statement of Facts

The Washington Court of Appeals summarized the facts regarding Petitioner's conviction

as follows:

> Fernandez began a relationship with AK around 2014 that lasted for four years. In 2015, he moved in with AK, into a home they shared with AK's mother and AK's minor daughter, OK. Fernandez would sometimes stay home with OK while AK and her mother were at work.
>
> On one occasion, when OK was about age 7, she ended up naked on Fernandez's lap in a rocking chair.[2] OK then noticed Fernandez's bare penis outside of his shorts and that it felt wet on her bottom. OK saw and felt that Fernandez's penis had fluid on it.[3] When she felt it "wet on [her] butt" and saw his penis, she jumped out of the chair and said "eww." 2 Verbatim Report of Proceedings (VRP) at 640.
>
> When AK returned home, OK told her that she had seen Fernandez's penis. Fernandez told AK that his shorts rode up and that OK had merely glimpsed it.
>
> Sometime later, OK related what happened to her adult mentor from the Great Life Mentoring Service. OK brought up to her mentor that she had seen Fernandez's penis. She told the mentor that it came out of Fernandez's pants, and then OK motioned to her crotch. OK told the mentor that his penis had "pee juice coming out the end" that she said "eww," but that Fernandez did not immediately put it away. OK then told the mentor that the "pee juice" got "on [her] butt."
>
> The mentor reported this to her supervisor, which led to the involvement of Child Protective Services (CPS) and the Washougal police. OK later told a CPS worker what happened consistent with what she reported to her mentor, including that she had been in the rocking chair with Fernandez and that his penis had "juice coming from it." 2 VRP at 551-56, 564-65. OK was removed to protective custody. While in protective custody, OK gave an account to a police child forensic interviewer that was consistent with her prior reports to her mentor and CPS worker. OK also drew a depiction of what she saw for the forensic interviewer.
>
> …

---

[2] [FN 2 by Court of Appeals] At that time, Fernandez would have been at least 30 years old.

[3] [FN 3 by Court of Appeals] OK referred to the fluid in various ways ("boy pee," "pee juice," and "natural juices") but it was never established for the record whether the fluid was urine or ejaculate. 1 VRP at 490-92; 2 VRP at 579, 600-01, 639; see also 2 VRP at 734.

1

2

Washougal police arrested Fernandez in September 2018. The State charged him with one count of first degree child molestation. The case proceeded to a jury trial in March 2020.

3

4

5

6

At trial, witnesses testified to the facts above. OK, AK, the mentor, the CPS worker, and Washougal police officers all testified consistent with OK's initial report. OK testified that she was sitting on Fernandez's lap watching television, when his penis "slipped out of his shorts." 2 VRP at 639. She said that it "had natural juices on it," and when asked what part of the penis had those juices on it, she replied, "everything." 2 VRP at 639. She also testified that Fernandez's penis was "on my butt for sure." 2 VRP at 640.

7

8

9

The jury found Fernandez guilty of first degree child molestation. The trial court sentenced Fernandez to a minimum term of 78 months as part of an indeterminate sentence. *See* RCW 9.94A.507. As part of the community custody conditions, the court imposed a condition prohibiting Fernandez from contacting any minors without approval of the Department of Corrections and his sexual deviancy treatment provider. Fernandez has a daughter from another relationship who lives with her biological mother out of state.

10

Dkt. 31-1 at 66-68 (Ex. 5).

11

## II.    State Court Procedural History

12

13

14

15

16

17

18

In September 2018, the State charged Petitioner with one count of first degree child molestation. *Id.* at 1, 67 (Exs. 1, 5). After a jury trial in March 2020, Petitioner was found guilty as charged. *Id.* The trial court sentenced Petitioner to an indeterminate sentence with a minimum term of 78 months of confinement pursuant to Revised Code of Washington ("RCW") 9.94A.507. *Id.* As part of the sentence, the court imposed community custody conditions that included prohibiting Petitioner from contacting any minors without prior approval from the Department of Corrections and his sexual deviancy treatment provider. *Id.*

19

20

21

22

23

Petitioner appealed his conviction to the Washington Court of Appeals, Division II, raising two claims: (1) insufficient evidence supported his conviction, and (2) the trial court violated his constitutional right to parent his children by imposing overly restrictive community custody conditions regarding contact with minors. *Id.* at 23-37, 65 (Exs. 2, 5). In an unpublished opinion filed February 8, 2022, the Court of Appeals affirmed Petitioner's conviction but

REPORT AND RECOMMENDATION - 3

1   remanded with direction the trial court reexamine the community custody condition regarding

2   contact with his minor children. *Id.* at 65-71 (Ex. 5). The Court of Appeals held sufficient

3   evidence supported the conviction but agreed with Petitioner the trial court failed to conduct the

4   required fact-specific inquiry regarding the scope and duration of the community custody

5   condition. *Id.*

6           Petitioner then petitioned the Washington Supreme Court for discretionary review; on

7   July 13, 2022, the Supreme Court denied review. *Id.* at 73-80, 91 (Exs. 6, 7). On February 23,

8   2023, the Superior Court entered an Order Correcting Judgment and Sentence amending the

9   community custody provision in the May 4, 2020, judgment and sentence to provide "Defendant

10  shall not have any contact with minors without prior approval of DOC and his sexual deviancy

11  treatment provider, with the exception of Defendant's own minor children." Dkt. 8 at 21.

12          On May 23, 2023, Petitioner filed a CrR 7.8 motion in Clark County Superior Court,

13  alleging prosecutorial misconduct in violation of his constitutional rights. Dkt. 31-2 at 96-172

14  (Ex. 9). Specifically, Petitioner claimed the prosecutor made prejudicial and false statements

15  during opening and closing arguments by asserting he was guilty of child molestation before

16  presenting evidence, claiming without evidentiary support that he rubbed the victim against his

17  penis until ejaculating, repeatedly referencing ejaculation during closing arguments to inflame

18  the jury. *Id.* at 8, 10-21. Petitioner argued these statements violated his right to a fair trial under

19  the Fifth, Sixth, Eighth and Fourteenth Amendments. *Id.* at 106 (Ex. 9). Petitioner also argued

20  that insufficient evidence supported his conviction because there was no evidence of sexual

21  gratification. *Id.* at 113 (Ex. 9).

22          On June 12, 2023, the Superior Court transferred Petitioner's CrR 7.8 motion to the

23  Washington Court of Appeals for consideration as a personal restraint petition ("PRP"),

1    concluding the motion was time-barred under RCW 10.73.090 because Petitioner filed it more

2    than one year after his judgment and sentence became final on May 4, 2020. *Id.* at 174, 188 (Exs.

3    10, 13). Petitioner objected to the transfer on June 26, 2023, arguing his motion was timely filed

4    within one year of the Court of Appeals' mandate in his direct appeal becoming final on July 13,

5    2022. *Id.* at 177 (Ex. 11). On July 17, 2023, the Court of Appeals rejected the Superior Court's

6    transfer finding Petitioner's CrR 7.8 motion was timely under RCW 10.73.090(3)(b) because he

7    filed it on May 23, 2023, within one year of the issuance of the July 18, 2022, mandate in his

8    direct appeal. *Id.* at 175 (Ex. 10).

9         The Court of Appeals returned the matter to the Superior Court for "further appropriate

10   action." *Id.* at 2. It appears on November 22, 2023, the Superior Court determined the matter was

11   not barred by RCW 10.73.090 but Petitioner had not made a substantial showing he was entitled

12   to relief or that an evidentiary hearing would be necessary to resolve the motion and accordingly

13   transferred the matter back to the Court of Appeals for consideration as a PRP. *Id.* at 188-322

14   (Exs. 13, 14); Dkt. 13-2 at 2-11 (Ex. 15).

15        On April 26, 2024, the Court of Appeals dismissed Petitioner's PRP. Dkt. 13-2 at 14-18

16   (Ex. 16). The Court found Petitioner's prosecutorial misconduct claim lacked merit and declined

17   to address Petitioner's insufficient evidence claim substantively because the issue had been

18   previously litigated and rejected on direct appeal. *Id.*

19        Petitioner sought discretionary review by the Washington Supreme Court. *Id.* at 20-23

20   (Ex. 17). The Washington Supreme Court denied review on June 27, 2024, finding Petitioner

21   failed to show the acting chief judge erred in dismissing his PRP. *Id.* at 25-26 (Ex. 18). Petitioner

22

23

filed the instant federal habeas petition on June 29, 2023.[4] Dkt. 1.

## GROUNDS FOR RELIEF

Petitioner presents the following grounds for relief in his federal habeas petition:

1. The evidence was insufficient to sustain Petitioner's conviction for First Degree
   Child Molestation because the State failed to prove beyond a reasonable doubt
   that he purposefully touched the victim for sexual gratification of either party or a
   third party. Dkt. 8 at 5.

2. The prosecutor engaged in misconduct that violated Petitioner's right to a fair trial
   by making prejudicial and knowingly false claims during opening and closing
   statements, including claiming Petitioner was guilty of First Degree Child
   Molestation and repeatedly asserting without evidence that certain wetness was
   ejaculate. *Id.* at 7-8.

3. The prosecutor's conduct violated judicial codes of conduct by knowingly
   presenting false statements to inflame the jury. *Id.* at 8-9.

4. Petitioner's conviction for First Degree Child Molestation should be reversed
   because the contact between Petitioner and the victim was not proven to be
   intentional sexual contact, as the wetness the victim felt came from Petitioner
   having just showered and put on gym shorts before the victim sat on his chair
   while he was playing video games. *Id.* at 10-11.

## DISCUSSION

### I.    Exhaustion and Timeliness

Respondent concedes Petitioner properly exhausted all of his federal habeas grounds for

relief by fairly presenting them to the Washington Supreme Court as federal claims. Dkt. 30 at 6.

Respondent also concedes Petitioner's habeas petition is timely. *Id.*

### II.   Merits Review

A habeas corpus petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in
State court proceedings unless the adjudication of the claim--

---

[4] Proceedings in this action were stayed from October 16, 2023, until October 11, 2024, to allow
petitioner to complete his proceedings in state court. Dkts. 14, 22.

1

2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

5

6

7

8

9

10

A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

11

12

13

14

15

16

17

18

19

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

20

21

22

23

This is a "'highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

1    correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

2    (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). "[H]abeas corpus is a 'guard

3    against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary

4    error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5

5    (1979) (Stevens, J., concurring in judgment)). "As a condition for obtaining habeas corpus from

6    a federal court," therefore, "a state prisoner must show that the state court's ruling on the claim

7    being presented was so lacking in justification that there was an error well understood and

8    comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

9        A habeas corpus petition also may be granted "if a material factual finding of the state

10    court reflects 'an unreasonable determination of the facts in light of the evidence presented in the

11    State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir.

12    2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be

13    correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear

14    and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court "may not simply disagree

15    with the state court's factual determinations," but it must "conclude" that those determinations

16    did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041,

17    1046 (8th Cir. 1998).

18        "[W]hether a state court's decision was unreasonable" also "must be assessed in light of

19    the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004);  *Miller-El v.*

20    *Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court

21    knew and did," and the state court's decision is "measured against [the Supreme] Court's

22    precedents as of 'the time the state court renders its decision.'" *Pinholster*, 563 U.S. at 182

23    (quoting *Lockyer*, 538 U.S. at 71-72); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011). In

1  addition, generally "federal habeas corpus relief does not lie for errors of state law." *Estelle v.*

2  *McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine

3  state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780

4  (1990)). The error, furthermore, generally must have "had substantial and injurious effect or

5  influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)

6  (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not

7  entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

8  prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

9      **A.    Discussion of Plaintiff's Grounds for Relief**

10          *i.    Sufficiency of the Evidence (Grounds 1 and 4)*

11      In Grounds 1 and 4, Petitioner argues his conviction is not supported by sufficient

12  evidence. Dkt. 8 at 5-11. In Ground 1, Petitioner alleges the State failed to prove beyond a

13  reasonable doubt he purposefully touched the victim for sexual gratification of either party or a

14  third party. *Id.* In Ground 4, Petitioner alleges the contact between petitioner and the victim was

15  not proven to be intentional sexual contact, because he argues the wetness the victim felt came

16  from petitioner having just showered and put on gym shorts before the victim sat on his chair

17  while he was playing video games. *Id.*

18      The Constitution bars a criminal conviction of any person except upon proof of guilt

19  beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When evaluating a claim of

20  insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

21  after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

22  could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

23  *Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "*Jackson* leaves juries broad

discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). Generally, the jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992). "A jury's credibility determinations are […] entitled to near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

To convict Petitioner of the crime of first-degree child molestation, the State had to prove that Petitioner had sexual contact with a person less than twelve years old and Petitioner was at least thirty-six months older than the victim. RCW 9A.44.083(1). The Court notes under the version of RCW 9A.44.083(1) in effect at the time of conviction, the State also had to prove Petitioner was not married to the person less than twelve years old with whom he had sexual contact. *See* 1994 Wa. ALS 271; 1994 Wa. Ch. 271; 1994 Wa. SB 6007. Under RCW 9A.44.010(13) "'[s]exual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." The Washington State Court of Appeals has interpreted the term "intimate parts" to have a broader meaning than "sexual" and to include "parts of the body in close proximity to the primary erogenous areas," including the hips, buttocks, and lower abdomen. *In re Welfare of Adams*, 24 Wn. App. 517, 519-21, 601 P.2d 995 (1979). Contact is "intimate" if "a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

The Court of Appeals rejected petitioner's insufficient evidence claim on direct appeal, stating the following:

REPORT AND RECOMMENDATION - 10

Fernandez first argues that there is insufficient evidence to support the jury's conviction. We disagree.

When considering a sufficiency of evidence argument, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015) (quoting *State v. Luvene*, 127 Wn.2d 690, 712, 903 P.2d 960 (1995)) (internal quotation marks omitted) (alteration in original). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201; *see also Condon*, 182 Wn.2d at 314. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Canfield*, 13 Wn. App. 2d 410, 418, 463 P.3d 755 (2020).

To convict Fernandez of first degree child molestation, the State had to prove that Fernandez had sexual contact with a person less than twelve years old and that he was at least thirty-six months older than the victim. RCW 9A.44.083(1). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13). We have interpreted the term "intimate parts" to have a broader meaning than "sexual" and includes "parts of the body in close proximity to the primary erogenous areas," including the hips, buttocks, and lower abdomen. *In re Welfare of Adams*, 24 Wn. App. 517, 519-21, 601 P.2d 995 (1979).

Sexual gratification is not an essential element of first degree child molestation, but merely clarifies the term "sexual contact." *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). Including sexual gratification in the definition of "sexual contact" serves to exclude inadvertent touching or contact from being a chargeable offense. *State v. Stevens*, 158 Wn.2d 304, 309, 143 P.3d 817 (2006). However, the State has a burden to show sexual gratification to prove sexual contact. *Stevens*, 158 Wn.2d at 309. Contact is "intimate" if a person of common intelligence could determine from the circumstances that parts touched were intimate and therefore touching was improper.[5] *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

Here the State presented evidence that Fernandez touched OK's unclothed intimate parts. 1 VRP at 490; 2 VRP at 552, 579-80, 600, 639-40. Further, the State presented uncontroverted evidence that OK came in contact with Fernandez's penis, which had "natural juices" all over it. 1 VRP at 490; 2 VRP at 552, 579-80, 600, 639-40. Drawing all inferences in the State's favor, this evidence was sufficient for a rational trier of fact to have found the elements of the crime beyond a reasonable doubt.

Fernandez argues that because the State presented no evidence that the liquid on Fernandez's penis was semen, and not urine, the State therefore cannot prove sexual contact because it cannot show sexual gratification. This argument strains credulity. Moreover, our Supreme Court has explained that under certain circumstances, urine may be indicative of sexual gratification in the context of sexual contact. *State v. Jones*, 112 Wn.2d 488, 497, 772 P.2d 496 (1989). Accordingly, we hold that sufficient evidence supports Fernandez's conviction.

Dkt. 31-1 at 68-70 (Ex. 5).

---

[5] [FN 4 by Court of Appeals] A jury may determine that parts of the body in close proximity to the primary erogenous areas are intimate parts. *Harstad*, 153 Wn. App. at 21.

REPORT AND RECOMMENDATION - 11

1    The Washington Supreme Court denied Petitioner's petition for review without comment.

2    *Id.* at 93 (Ex. 7).

3    Considered in the light most favorable to the prosecution, the evidence was sufficient for

4    a rational jury to find the essential elements of the crime of first degree child molestation beyond

5    a reasonable doubt. As the Court of Appeals determined, the record reflects the state presented

6    evidence Petitioner touched OK's unclothed intimate parts, and OK came in contact with

7    Petitioner's penis which had "natural juices" all over it.

8    Specifically, OK testified she saw petitioner's penis, she was sitting on his lap and it

9    "slipped out of his shorts." Dkt. 31-2 at 165-168. She testified it had "natural juices on it." *Id.*

10   When asked what part of the penis had juices on it she testified "everything" and further testified

11   the penis was "on my butt for sure … it was wet on my butt." *Id.* OK further testified she had

12   jumped out of the chair and said "eww" and the penis had "stayed there." *Id.*

13   Lori Horwitz, a mentor with Great Life Mentoring, also testified OK had told her she had

14   seen Smokey's penis, it came out of his pants and "had pee juice coming out the end of it." *Id.* at

15   105-107, 125-128. She testified OK told her OK had said "eww" in response to seeing this. *Id.*

16   Ms. Horwitz further testified "I said well, then did he put it away, and [OK] said no." *Id.* Ms.

17   Horwitz testified OK told her "the pee juice got on my butt" and further testified "I said did it get

18   on your shorts or pajamas, and [OK] said no, it got on my butt because I was naked and I was

19   sitting on his lap." *Id.* Ms. Horwitz testified OK told her this happened when she was 7. *Id.*

20   A Child Protective Services ("CPS") worker, Kimberly Hartnagel also testified when she

21   asked OK if she had ever been uncomfortable with any kind of touch she answered "yes." *Id.* at

22   64, 78-79. Ms. Hartnagel testified when she asked who made her uncomfortable surrounding

23   touch OK "put her head back down in her hands and became tearful" and responded "Smokey."

1   *Id.* Ms. Hartnagel further testified OK told her she and Petitioner were both sitting in the rocking

2   chair in the living room and "[Petitioner's] vagina accidentally fell out of his pants." *Id.* Ms.

3   Hartnagel testified when she asked what the vagina looked like OK stated it was red and pink at

4   the top and when asked what else OK saw OK stated "I saw the juice coming from it" and OK

5   had also said "eww." *Id.* at 78-79, 81.

6       The state also presented testimony from Stacia Adams, a Child Forensic Interviewer with

7   the Pierce County Prosecuting Attorney's Office, who testified OK drew a picture "showing a

8   pointy triangular object that she identified as a boy vagina." *Id.* at 850.

9       Based on the record, the Court of Appeals reasonably concluded, drawing all inferences

10  in the State's favor, the evidence was sufficient for a rational trier of fact to have found the

11  elements of the crime beyond a reasonable doubt, i.e., that Petitioner touched the sexual or other

12  intimate parts of OK for the purpose of gratifying sexual desire.[6]

13      The state appellate court further reasonably rejected Petitioner's argument the State could

14  not prove sexual contact because it presented no evidence the liquid on Petitioner's penis was

15  semen and not urine. The jury could reasonably infer from the evidence presented the liquid was

16  semen and, further, as the state appellate court noted, the Washington Supreme Court has found

17  that under certain circumstances urine may be indicative of sexual gratification in the context of

18  sexual contact. *State v. Jones*, 112 Wn.2d 488, 497, 772 P.2d 496 (1989).

19      In sum, viewing the evidence in the light most favorable to the prosecution, the state

20  appellate court reasonably concluded that a rational jury could have found the essential elements

21

22

23  _____

[6] The Court notes that Petitioner does not argue that there was insufficient evidence to support the other elements of the crime, specifically, that he was not married to OK or that OK was less than twelve and that Petitioner was thirty-six months older than OK at the time of the incident. And the record shows evidence was presented proving these elements. *See* Dkt. 31-2 at 190, 260.

REPORT AND RECOMMENDATION - 13

1    of the crime of first-degree child molestation beyond a reasonable doubt. Petitioner fails to show

2    the state court's rejection of his insufficient evidence claim was contrary to or an unreasonable

3    application of clearly established federal law, as determined by the Supreme Court, or an

4    unreasonable determination of the facts. Accordingly, Grounds 1 and 4 should be denied.

5        The Court also notes to the extent Petitioner's claim in Count 4 could be construed as an

6    attempt to assert a separate claim of actual innocence, he fails to demonstrate he is entitled to

7    federal habeas relief on that basis. The Supreme Court has not resolved whether a freestanding

8    actual innocence claim is cognizable in a federal habeas action. *See McQuiggin v. Perkins*, 569

9    U.S. 383, 393 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief

10   based on a freestanding claim of actual innocence"); *see also Herrera v. Collins*, 506 U.S. 390,

11   400-17 (1993) (noting "claims of actual innocence based on newly discovered evidence have

12   never been held to state a ground for federal habeas relief absent an independent constitutional

13   violation occurring in the underlying state criminal proceeding"). In *Herrera*, the Supreme Court

14   acknowledged potentially a freestanding actual innocence claim might warrant federal habeas

15   relief in a capital case but noted it would be only upon an "extraordinarily high" and "truly

16   persuasive" threshold showing.  *Id.* at 417.

17       The Ninth Circuit has "not resolved whether a freestanding actual innocence claim is

18   cognizable in a federal habeas corpus proceeding in the non-capital context, although [it has]

19   assumed that such a claim is viable." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). But,

20   the Ninth Circuit has stated, assuming a freestanding actual innocence claim would be

21   cognizable, a habeas petitioner "must 'go beyond demonstrating doubt about his guilt and must

22   affirmatively prove that he is probably innocent.'" *Id.* at 1246, 1251 (quoting *Carriger v.*

23   *Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)).

REPORT AND RECOMMENDATION - 14

1     Even assuming a freestanding claim of actual innocence were cognizable, Petitioner's

2     arguments fail to satisfy the standards discussed above. Petitioner points to no "affirmative"

3     proof of his innocence or "conclusive exoneration." *Jones*, 763 F.3d at 1246, 1251. At best

4     Petitioner argues the jury should have interpreted the evidence differently. This does not

5     constitute affirmative proof Petitioner is probably innocent. *See id.* at 1251 ("Evidence that

6     merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not

7     affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual

8     innocence."); *see also Carriger*, 132 F.3d at 476 (threshold for a freestanding claim of actual

9     innocence "contemplates a stronger showing than insufficiency of the evidence to convict").

10    Petitioner points to no affirmative proof of probable innocence. Rather, his claim can at

11    best be construed as a challenge to the sufficiency of the evidence which, as discussed above,

12    also fails. Accordingly, to the extent Petitioner's Ground 4 claim can be construed to assert a

13    separate claim of actual innocence, Petitioner fails to establish he is entitled to habeas relief on

14    such a claim.

15    For the reasons above, Grounds 1 and 4 should be denied.

16        ii.    *Prosecutorial Misconduct (Grounds 2 and 3)*

17    In Grounds 2 and 3, Petitioner alleges the prosecution committed misconduct that

18    prejudiced him and denied him of his right to a fair trial. Dkt. 8 at 7-9. In Ground 2, Petitioner

19    alleges the prosecutor made knowingly false claims during opening and closing statements,

20    including claiming Petitioner was guilty of first degree child molestation and repeatedly asserting

21    without evidence that certain wetness was ejaculate. *Id.* In Ground 3, Petitioner alleges the

22    prosecutor's conduct violated judicial codes of conduct by knowingly presenting false statements

23    to inflame the jury. *Id.*

REPORT AND RECOMMENDATION - 15

In determining whether a prosecutor's conduct rises to the level of prosecutorial

misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*,

477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (*Darden*

standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is

presumed to be harmless unless the error had "substantial or injurious effect or influence in

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wood v. Ryan*,

693 F.3d 1104, 1113 (9th Cir. 2012) ("On habeas review, constitutional errors of the 'trial type,'

including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious

effect or influence in determining the jury's verdict.'") (quoting *Brecht*, 507 U.S. at 637-38). It is

the petitioner's burden to state facts that point to a real possibility of constitutional error in this

regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

To determine whether a due process violation occurred, the court "must consider the

probable effect the prosecutor's [comments] would have on the jury's ability to judge the

evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). To do so, the prosecutor's

remarks must be viewed in context. *See Boyde v. California*, 494 U.S. 370, 385 (1990); *United

States v. Robinson*, 485 U.S. 25, 33–34 (1988); *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir.

1998). The Court may consider whether the prosecutor's comments manipulated or misstated the

evidence, whether the trial court gave a curative instruction, and the weight of the evidence

against the accused. *Darden*, 477 U.S. at 181–82. Closing arguments are not evidence, and

ordinarily carry less weight with the jury than the court's instructions. *Boyde*, 494 U.S. at 384;

*Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999). Furthermore, the Court "presumes jurors

1    follow the court's instructions absent extraordinary situations." *Tak Sun Tan v. Runnels*, 413

2    F.3d 1101, 1115 (9th Cir. 2005) (citing *Francis v. Franklin,* 471 U.S. 307, 324 n. 9 (1985)).

3         "Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and

4    all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th

5    Cir. 2000); *see also United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)

6    ("prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue

7    reasonable inferences based on the evidence"), *as amended on denial of reh'g* (Apr. 15, 1993).

8    "The latitude afforded to prosecutors in arguing reasonable inferences from the evidence extends

9    to attacks on a witness's credibility." *Spector v. Diaz*, 115 F. Supp. 3d 1121, 1149 (C.D. Cal.

10   2015). "A prosecutor may not, however, base closing argument on evidence not in the record."

11   *U.S. v. Sanchez-Soto*, 617 Fed. App'x. 695, 697 (9th Cir. 2015).

12        In rejecting petitioner's prosecutorial misconduct claim in the context of his PRP, the

13   Court of Appeals stated:

14            [Petitioner] argues that he was denied a fair trial based on prosecutorial
         misconduct and sufficient evidence does not support his conviction because there was no

15       evidence of sexual gratification.
             A petitioner may request relief through a personal restraint petition (PRP) when

16       he or she is under unlawful restraint. *In re Pers. Restraint of Monschke*, 160 Wn. App.
         479, 488, 251 P.3d 884 (2010); RAP 16.4(a)-(c). This court will reach the merits of a

17       PRP only after the petitioner makes a showing of (1) constitutional error from which he
         has suffered actual and substantial prejudice or (2) nonconstitutional error constituting a

18       fundamental defect that inherently resulted in a complete miscarriage of justice. *In re
         Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A petitioner bears

19       the burden of showing prejudicial error by a preponderance of evidence. *In re Pers.
         Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). Dkt. 11-1 at 36-38 (Ex. 3).

20           The petitioner must state the facts on which the claims of unlawful restraint are
         based and the evidence available to support the factual allegations, a rule that "is critical

21       to the outcome of most PRPs." *In re Pers. Restraint of Moncada*, 197 Wn. App. 601, 604,
         391 P.3d 493 (2017); RAP 16.7(a)(2). Bare assertions and conclusory allegations are not

22       sufficient, nor are arguments made only in broad general terms. *In re Pers. Restraint of
         Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015). This court dismisses as

23       frivolous a PRP that fails to present an arguable basis for collateral relief in either law or
         fact, given the constraints of the PRP vehicle. *In re Pers. Restraint of Khan*, 184 Wn.2d
         679, 686-87, 363 P.3d 577 (2015).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

     During trial, the State presented evidence that Fernandez touched his girlfriend's seven year-old daughter's unclothed intimate parts. *State v. Fernandez*, No.54606-0-II, slip op. at 2 (Wash. Ct. App. Feb 8, 2022) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2054606-0-II%20Unpublished%20Opinion.pdf, review denied, 199 Wn.2d 1022 (2022). The State also presented evidence that the child came into contact with Fernandez's penis, which had "natural juices" all over it. *Id.* at 3. And made her feel "wet on [her] butt." *Id.* at 2. The prosecutor commented in opening arguments and closing arguments that Fernandez ejaculated.

I. PROSECUTORIAL MISCONDUCT

     To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). We look at "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury verdict. *Id.* The prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Id.* at 680.

     When the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was so flagrant and ill-intentioned that a jury instruction would not have cured the resulting prejudice. *Zamora*, 199 Wn.2d at 709. If a defendant fails to make this showing, the prosecutorial misconduct claim is waived. *Slater*, 197 Wn.2d at 681.

     Fernandez argues that the prosecutor committed misconduct by arguing that he ejaculated. There was no objection to this argument at trial.

     The prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Id.* at 680. Ejaculation can be inferred from the evidence that the child came into contact with Fernandez's penis, which had "natural juices" all over it and made her feel "wet on [her] butt." *Fernandez*, 20 Wn. App. 2d 1073, slip op. at 2, 3. Moreover, even assuming that the prosecutor's argument was improper, Fernandez fails to show that the conduct was so flagrant and ill-intentioned that a jury instruction would not have cured the resulting prejudice. Accordingly, his prosecutorial argument fails.

16

Dkt. 13-2 at 14-16 (Ex. 16).

17

In denying Petitioner's motion for discretionary review the Washington Supreme Court

18

also rejected Petitioner's claim finding:

19

20

21

22

23

     To obtain this court's review, Fernandez must show that the acting chief judge's decision conflicts with a decision of this court or with a published Court of Appeals decision, or that he is raising a significant constitutional question or an issue of substantial public interest. RAP 13.5A(a)(1), (b); RAP 13.4(b). He does not cite these criteria for review, much less show that any of them applies. Below he claimed that the prosecutor committed misconduct in opening and closing arguments by stating that he ejaculated on the victim, an assertion, he urges, that the evidence did not support. But as the acting chief judge observed, the evidence showed Fernandez touched the victim with his penis while fluid came out of it, wetting the victim. It was not definitively established whether this fluid was semen or urine, but the prosecutor could reasonably argue the inference that it was semen. Moreover, Fernandez did not object to this argument at the

time it was made, so even if the prosecutor misrepresented the evidence, Fernandez had to establish that the misconduct was so flagrant and ill-intentioned that its prejudicial effect could not have been neutralized by a jury instruction. *State v. Zamora*, 199 Wn.2d 698, 709, 512 P.3d 512 (2022). The acting chief judge found no such showing. Fernandez does not demonstrate that the acting chief judge erred.

Dkt. 13-2 at 25-26 (Ex. 18).

The state appellate court reasonably rejected Petitioner's prosecutorial misconduct claim. As discussed above, and as the state appellate court observed, there was generally consistent testimony from witnesses including OK, as well as from OK's mentor Ms. Horwitz and CPS worker Ms. Hartnagel, regarding statements made to them by OK, that Petitioner touched OK with his penis while fluid came out of it. *See supra* at 12-14. OK also testified, and Ms. Horwitz testified OK told her, that the fluid got OK's buttocks wet. *Id.* Based on the evidence, the state appellate court reasonably determine that, although it was not definitively established whether the fluid was semen or urine, the prosecutor could reasonably argue the inference that it was semen.

The record shows the prosecutor did not argue there was testimony or other evidence in the record specifically identifying or naming the fluid as ejaculate or semen. *See* Dkt. 13-2 at 249-278, 311-318, 776-786. Rather, the prosecutor only argued this was the reasonable inference from the evidence in the record. *Id.* In fact, although the prosecutor argued that the reasonable inference from the evidence was that the liquid in question was ejaculate, she did implicitly acknowledge that it was not specifically identified as such in the testimony, stating "[t]he fact that he had a naked penis on her bottom and then had ejaculate, or best case scenario, urine on her bottom, is sexual contact." *Id.* at 261. Furthermore, the record shows the trial court instructed the jury that statements made by counsel were not evidence, that the only evidence the jury was to consider consisted of testimony of witnesses and exhibits admitted into evidence, and that the jury must disregard anything the lawyers say that is at odds with the evidence or the law. Dkt.

13-2 at 242, 762. The prosecutor and defense counsel also reminded the jury that counsel's arguments were not evidence. *See* Dkt. 13-2 at 251-252, 314, 787. Furthermore, there was significant evidence in the record in the form of consistent testimony presented by OK, her mentor Ms. Horwitz, CPS worker Ms. Hartnagel, and the Child Forensic Interviewer Ms. Adams, supporting a finding of guilt.

Petitioner also argues the prosecutor committed misconduct in arguing petitioner was guilty of first degree child molestation. But the prosecutor is allowed to present arguments based upon the evidence presented (or in opening statement, the evidence that they will be presenting) and reasonable inferences from that evidence, and to argue it supports a finding of guilt on the crime charged.

In his response to Respondent's answer, petitioner raises the additional argument that the prosecutor committed misconduct by asserting, without evidence, that Petitioner was "rubbing the child up and down on his lap to cause him to ejaculate." Dkt. 32 at 5. Generally, "[a] traverse is not the proper pleading to raise additional grounds" for habeas relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). "A district court 'has discretion, but is not required to' consider evidence and claims raised for the first time after the filing of the petition." *Moore v. McVay*, No. 22-CV-02747-JST, 2023 WL 2541328, at *4 (N.D. Cal. Mar. 15, 2023) (quoting *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) and citing *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000)). "This includes new claims raised by a petitioner in the traverse." *Id.* (citing *Jackson v. Roe*, 425 F.3d 654, 655 n.1 (9th Cir. 2005) (noting magistrate judge's consideration of a new claim raised for first time in traverse)).

But even if the Court deems it appropriate to consider this claim raised for the first time in traverse, the Court should find this claim fails. Petitioner's argument appears to be referring to

a statement by the prosecutor in opening statements that "[w]hat was going on was that Mr. Fernandez was taking an opportunity of being alone with this child to rub this child against his penis on his lap and bring himself to orgasm." Dkt. 31-2 at 779. Petitioner argues there was no testimony that he was rubbing OK against him when she was sitting in his lap. But the prosecutor was permitted to make arguments during opening statements regarding what the evidence at trial would show and the reasonable inferences drawn from that evidence. The prosecutor did not assert during opening or closing statement that there was, or would be, testimony specifically stating that Petitioner was rubbing OK against him on his lap but, rather, she argued that this was the reasonable inference given the evidence that while OK was sitting on Petitioner's lap, Petitioner's penis came out of his shorts, there was liquid coming out of the end, and that the liquid touched OK's bare buttocks. This was a reasonable inference for the prosecutor to argue based upon the evidence presented at trial.

Furthermore, even if this statement were improper, when viewed in context it does not rise to the level of a due process violation. Here, the statement was not made repeatedly, and, at a later point the prosecutor acknowledged that "we don't know what the Defendant was doing with his penis while they were watching the show beforehand. Enough to get himself erect, enough to get himself to climax. Because [OK] wasn't noticing or seeing doesn't make a difference." *Id.* at 268. Furthermore, the trial court clearly instructed the jury that statements made by counsel were not evidence, and there was significant evidence in the form of consistent testimony presented by OK, her mentor Ms. Horwitz, CPS worker Ms. Hartnagel, and the Child Forensic Interviewer Ms. Adams, supporting a finding of guilt.

Accordingly, Petitioner fails to show the state appellate court's rejection of his prosecutorial misconduct claim was contrary to or involved an unreasonable application of,

REPORT AND RECOMMENDATION - 21

clearly established federal law, as determined by the Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.

## EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Pinholster*, 563 U.S. 170. The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

1    Under this standard, the Court finds that no reasonable jurist could disagree with the

2   Court's findings. Petitioner should address whether a COA should issue in his written objections,

3   if any, to this Report and Recommendation.

4                                    **OBJECTIONS AND APPEAL**

5          This Report and Recommendation is not an appealable order.  Therefore, a notice of

6   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

7   assigned District Judge enters a judgment in the case.

8          Objections, however, may be filed and served upon all parties no later than **June 27,**

9   **2025.**  The Clerk should note the matter for **June 27, 2025,** as ready for the District Judge's

10  consideration if no objection is filed.  If objections are filed, any response is due within 14 days

11  after being served with the objections.  A party filing an objection must note the matter for the

12  Court's consideration 14 days from the date the objection is filed and served.  The matter will

13  then be ready for the Court's consideration on the date the response is due.  The failure to timely

14  object may affect the right to appeal.

15         DATED this 12th day of June, 2025.

16

17                                          _____
                                            BRIAN A. TSUCHIDA
18                                          United States Magistrate Judge

19

20  _____

21

22

23

REPORT AND RECOMMENDATION - 23